UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 10-50097-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| DEREK DANIEL BLACK ELK, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

An indictment was filed charging the defendant Derek Daniel Black Elk with aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a)(1) and 1153.  (Docket 1).  Following disclosure of the government's notice of expert witnesses (Docket 27), defendant filed a motion to limit the experts' testimony.  (Docket 29).

**DISCUSSION**

The government's notice disclosed that all tests performed by its three forensic experts were negative for physical evidence linking Mr. Black Elk to a sexual act with the alleged victim.  (Docket 27).  The government's notice proposed the witnesses would explain the absence of physical evidence.  Id. The witnesses' testimony is summarized as follows:

> Jenny Fosness.  She will explain the variable processes which could occur during sexual contact to explain why semen might not be found on the items taken from the victim.  Those processes are: no sexual contact occurred, the assailant did not

> ejaculate inside or on the victim, or the assailant wore a condom.
>
> Edward Aamold. He will explain the variables which can make it difficult for DNA typing to be found on a bite mark. One variable is whether enough DNA transferred during the contact. DNA can be removed following contact due to a variety of different factors, including clothing contact to the affected area, washing or showering by the victim, and the time lapse since the assault.
>
> Sandra Koch. She will explain the different scientific reasons why pubic hair from an assailant might not be found in the victim's recto-vaginal region following sexual contact including: there was a lack of a hair exchange during sexual contact, there was no sexual contact, or there was hair exchange but such evidence fell off of the victim prior to collection. She will also discuss the various factors that could influence loss of such evidence prior to evidence collection.

Id. at pp. 2-4. The government asserts the bases for these opinions will be the witnesses' education, training, and experience conducting biological testing in criminal sexual assault cases as reflected in their curriculum vitaes. Id.

Defendant moves to preclude the government's expert witnesses from testifying how the absence of physical evidence may "support[] the testimony of the government's fact witnesses." (Docket 30, p. 5). Defendant argues:

> None of the experts can testify to **any** degree of scientific certainty as to the likely, more likely, or less likely explanation for the non-existence of evidence resulting from the testing they performed nor explain how evidence which they tested came to be discovered in the location it was found. Only the limited specific test results identified in their reports are evidence that can be said to make things "more probable or less probable" than they would be without their testimony. Any testimony beyond those specific

> findings is speculation and meaningless to the jury. None of any of the remainder of any expert's proposed additional conclusions can even be established to a degree that makes them "more probable or less probable" so as to help the jury do anything but speculate.

Id. at p. 6 (emphasis in original). Even if relevant, defendant argues this testimony must be excluded under Fed. R. Evid. 403. Id.

> Federal Rule of Evidence 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 testimony initially must be evaluated by the court to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). "Unlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Id. at p. 592 (citing Rule 702). "[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." Id. at p. 593. "Another pertinent consideration is whether the theory or technique

has been subjected to peer review and publication." Id. "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." Id. "The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." Id. at 594.

Under Daubert, "[t]he inquiry envisioned by Rule 702 is, . . . a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Id. at 594-95. The Court cautioned trial courts on the use of expert testimony.

> [A] judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules. Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Rule 706 allows the court at its discretion to procure the assistance of an expert of its own choosing. Finally, Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Judge Weinstein has explained: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."

Id. at 595.

Once a party makes a Daubert challenge to the admissibility of expert testimony, the court is obligated to hold a Daubert hearing to determine the reliability and validity of the proposed testimony. United States v. Iron Cloud, 171 F.3d 587, 590 (8th Cir. 1999) ("By denying Iron Cloud's request for a Daubert hearing . . . [the court] ignored established procedure."). But see also United States v. Evans, 272 F.3d 1069, 1094 (8th Cir. 2001) ("There is no requirement that the District Court always hold a Daubert hearing prior to qualifying an expert witness.").

The government represents its witnesses' testimony "is supported by literature and is generally accepted within their respective scientific communities." (Docket 37, pp. 5-6). Defendant argues "[a]ny testimony by an expert as to why certain test results failed to produce positive matches with the defendant or failed to produce test samples sufficient for better conclusions is rank speculation." (Docket 30, p. 7). It is the court's obligation to determine whether there is scientific support for the experts' conclusions or the testimony is inadmissible speculation. Conroy, 424 F.3d 833, 839 (8th Cir. 2005).[1]

---

[1] Although a Daubert challenge was withdrawn, the defendant objected to the expert's testimony, both before and during trial, under Rule 702. Conroy, 424 F.3d at 838-39.

**ORDER**

Based upon the above analysis, it is hereby

ORDERED that a <u>Daubert</u> hearing shall be held on **Friday, May 27, 2011, at 9 a.m.**, in conjunction with the final pretrial conference.

IT IS FURTHER ORDERED that any scientific literature or documentation to be offered at the hearing by either party shall be marked as an exhibit and provided to the court by 5 p.m. on **Monday, May 16, 2011**.

Dated April 19, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE